**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------X

**LENORA ACOSTA A/K/A LENORA ANCHUNDIA,**

                                    **Case No.: 19-CV-1961**

**Plaintiff,**

    **-against-**

                                  **DEMAND FOR A JURY TRIAL**

**FORSTER & GARBUS, L.L.P.,**

**Defendant.**

--------------------------------------------------------------------X

**COMPLAINT**

Plaintiff Lenora Acosta a/k/a Lenora Anchundia brings suit against Defendant Forster & Garbus, L.L.P., a debt collection law firm, for its violations of the Fair Debt Collection Practices Act, 15. U.S.C. § 1962 *et seq*, and N.Y. General Business Law § 349 *et seq*, and in support would show as follows.

**PRELIMINARY STATEMENT**

1.      Ms. Lenora Acosta ("Ms. Acosta"), brings this civil action against Forster & Garbus, L.L.P. ("Defendant") for unfair, unconscionable, and deceptive conduct in the course of collecting a debt.

2.      Defendant is a debt collection law firm that sued Ms. Acosta in 2007 on behalf of its client, Arrow Financial Services, L.L.C. ("Arrow Financial"), to collect a credit card debt that Ms. Acosta allegedly owed. Defendant did not serve Ms. Acosta with the summons and complaint, and so Ms. Acosta did not know about the lawsuit. Defendant did not meaningful review the case file, filed a facially defective affidavit of service that purports to have effectuated service at an address where Ms. Acosta never lived, and, on the basis of the defective service, obtained a judgment against Ms. Acosta for more than $10,000.

1

3.      Ms. Acosta remained unaware of the existence of the case or the judgment for more than a decade, during which time the judgment amount ballooned to over $20,000. In the meantime, Arrow Financial sold the judgment to another company.

4.      In 2018, Defendant began to collect on the judgment by garnishing Ms. Acosta's wages, again without any meaningful review of the case. Defendant garnished Ms. Acosta's wages on behalf of Arrow Financial—a company that no longer owned the judgment.

5.      When Ms. Acosta appeared pro se to vacate the judgment on the grounds that she was never served, Defendant doubled down on its misconduct, misrepresenting matters of both law and fact, thereby unfairly and unduly prolonging the underlying debt collection action.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692 *et seq*. ("FDCPA"), and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in Richmond County, New York.

## PARTIES

8.      Plaintiff Lenora Acosta ("Ms. Acosta") is a natural person residing at 106 Burgher Avenue, Staten Island, NY 10304. Ms. Acosta's legal name is Lenora Anchundia, but she has used the name Lenora Acosta since getting married.

9.      Ms. Acosta is a "consumer" as defined by 15 U.S.C. § 1692a(3) of the FDCPA because Ms. Acosta was alleged to owe a debt, arising from credit card transactions to purchase goods for personal and household purposes, to a debt purchaser.

2

10.     Defendant is a law firm regularly engaged in the business of collecting debts in New York State.

11.     Defendant is a "debt collector" within the meaning of § 1692a(6) of the FDCPA.

12.     Since at least 2007, Defendant has filed thousands of lawsuits in New York State on behalf of putative creditors for the collection of consumer debts.

13.     Defendant's principal place of business is located at 60 Motor Parkway, Commack, NY 11725.

## STATEMENT OF FACTS

### A. Defendants Sued Ms. Acosta and Obtained a Judgment Without Meaningful Review

14.     On or around November 1, 2007, Defendant, on behalf of its client Arrow Financial, a third party debt buyer, filed a debt collection suit against Ms. Acosta in New York City Civil Court, Richmond County, alleging a debt of $9,788.09 based on an allegedly breached credit card agreement. *Arrow Financial Services, LLC, A/P/O Household Bank v. Lenora Anchundia*, CV-23286-07/RI ("collections lawsuit"). The complaint listed Ms. Acosta's address as 123 Ada Drive, Staten Island, NY 10314 ("123 Ada Drive").

15.     According to the affidavit of service, after two alleged prior service attempts on December 1, 2007, and December 3, 2007, process server Hector Flores allegedly served Ms. Acosta pursuant to N.Y. C.P.L.R. § 308(4), so-called "nail and mail" service, by affixing a copy of the summons and complaint to the door of 123 Ada Drive on December 4, 2007, at 5:49 p.m. and by mailing a copy of the summons and complaint to the same address on December 7, 2007.

16.     Ms. Acosta has never lived at 123 Ada Drive, the alleged service address. Before May 2006, Ms. Acosta and her family lived at **127** Ada Drive, Staten Island, NY 10314 ("127 Ada Drive"), down the street from the alleged service address. However, Ms. Acosta and her

family moved to 106 Burgher Avenue, Staten Island, NY 10304 ("106 Burgher Avenue") in May 2006.

17.     Ms. Acosta was living at 106 Burgher Avenue in December 2007, the time of the purported service, and still lives at 106 Burgher Avenue today.

18.     Ms. Acosta was never served with the summons and complaint.

19.     Mr. Flores also attested in the affidavit of service that "Defendant['s] Name [was] on [the] Mailbox."

20.     This is false. Ms. Acosta never lived at 123 Ada Drive and thus her name did not appear on the mailbox at that address.

21.     In the affidavit of service, Mr. Flores further attested that he asked "the indicated person" whether Ms. Acosta was presently serving in the armed forces, and was "told" that Ms. Acosta was not. There was no person indicated anywhere on the affidavit of service. Thus, the affidavit of service was facially defective.

22.     The affidavit of service listed Accu-Serve Ltd. ("Accu-Serve") as the process service agency for which Mr. Flores worked.

23.     Because she was never served, Ms. Acosta was unaware of the collections lawsuit and, as a result, did not answer or otherwise appear to defend herself.

24.     On or around January 22, 2008, Defendant requested the Richmond County court clerk to enter a default judgment against Ms. Acosta for $10,345.77 based on Ms. Acosta's nonappearance in the collections lawsuit.

25.     Defendant's attorney affirmation in support of the default judgment stated that "service of the summons/verified complaint has been made upon defendant by personal/sub service or acknowledgment of service[,]" and that an additional copy of the summons and

complaint was mailed to 123 Ada Drive, "this being the last known residence of the
Defendant/s[,]" on December 20, 2007.

26.    Both of these statements were false.

27.    Upon information and belief, Defendant did not meaningfully review its own
files, or the files of its client, Arrow Financial, to confirm Ms. Acosta's address was correctly
stated on the summons and complaint and on the affidavit of service. Any meaningful review of
the file should have revealed that service was made on the incorrect address.

28.    On or around June 23, 2010, Defendant entered a Consent Order with the
Attorney General of the State of New York, pursuant to an investigation into Defendant's
business relation with American Legal Process, a process service agency whose process servers
failed to properly serve consumers across the state with legal papers, causing thousands of
defendants to unknowingly default and have costly judgments entered against them without the
chance to respond or defend themselves.

29.    On or around January 30, 2013, Accu-Serve, the agency for which the process
server who alleged to have served Ms. Acosta, entered into a Consent Order with the New York
City Department of Consumer Affairs for conduct related to improper and fraudulent service of
process. Accu-Serve employed several high-profile process servers known to have engaged in
"sewer service" and other forms of improper service, many of whom have since lost their
license.

30.    Defendant also affirmed that, "upon the facts stated in the affidavit of the process
server," Ms. Acosta was not serving in the armed forces[,]" which indicated that Defendant had
reviewed the affidavit of service.

31.     Upon information and belief, Defendant did not meaningfully review the affidavit of service before making this statement. And, any meaningful review of the affidavit of service by an attorney would have revealed the facial defect on the affidavit of service— that the affidavit refers to an "indicated person" but there is no person identified.

32.     A default judgment was entered against Ms. Acosta on February 15, 2008, for a judgment total of $10,406.66. The default judgment included the amount alleged in the complaint ($9,788.09); Interest at the rate of 9% from August 9, 2007 ($458.57); Cost by Statute ($50); Index Number fee ($45); Service fee ($25); and an Enforcement fee ($40) for a total of $10,406.66.

33.     Upon information and belief, Defendant did not send Ms. Acosta a notice of entry of the default judgment.

34.     Ms. Acosta never received a copy of a notice of entry of the default judgment.

**B. Arrow Financial Sold the Judgment Against Ms. Acosta to LVNV**

35.     On or around June 5, 2014, Defendant signed a "consent to change attorney form" and filed it in the collections lawsuit. Defendant stated that Arrow Financial had assigned the judgment against Ms. Acosta to a different company, LVNV Funding LLC ("LVNV"), and that LVNV was retaining new counsel to represent it. The form was also signed by the alleged incoming attorney and LVNV.

36.     In a Decision and Order dated August 27, 2014, and filed September 16, 2014, the Hon. Philip Straniere of the Richmond County Civil Court rejected the consent to change attorney form on two grounds: "1) No proof of assignment of debt from Household Bank [the original creditor] to Arrow Financial Services, LLC, [and] 2) No proof of assignment of debt from Arrow Financial Services, LLC [to LVNV]."

6

37.    Judge Straniere's decision raised concerns about "the legal problems created by the failure to have a proper chain of assignment, the correct attorney of record, or other discrepancy which question the accuracy of the information being provided and the legal ability of plaintiff to prove its case had the matter come to trial."

38.    Judge Straniere directed that Defendant cure this defect by sending a notice to Ms. Acosta stating:

> 1) The name of the original creditor and the last four digits of the credit card number. 2) The name of the plaintiff if different. 3) The name and address of the current owner of the debt. 4) The name and address of current counsel and information by which the debtor may contact counsel should the defendant want to resolve the matter. 5) A notice to the defendant that should they want to find out the status of this case they are to contact the Clerk of the Court[.]

39.    Judge Straniere instructed that "[c]ounsel is to file a copy of the notice with proof of mailing with the clerk of the court within 90 days of the date of this decision."

40.    Judge Straniere concluded his Decision and Order by stating that, "[o]wing to the large number of defects found in consumer credit litigation and the unusually high percentage of default judgments this litigation generates, defendants responding to the above notice will be able to assert any defenses that would have existed at the time the litigation was initially commenced."

41.    Upon information and belief, Defendant did not conduct any meaningful review of Ms. Acosta's account as a result of the Decision and Order.

42.    Ms. Acosta never received a copy of the consent to change attorney form, or any notice related to a change of attorney or the assignment of the judgment creditor. Upon information and belief, no notice detailing the basis of the claim as directed by Judge Straniere or the consent to change attorney form was ever sent to Ms. Acosta. As a result, she was unable to

appear and defend herself at that time. Defendant's failure to notify Ms. Acosta of the collections lawsuit against her concealed the existence of the collections lawsuit.

43.     There is no copy of any notice or proof of mailing of the consent to change attorney form, or any notice related to a change of attorney or the assignment of the judgment creditor in the collections lawsuit case file. The collections lawsuit case file also does not contain a notice sent within ninety (90) days as directed by the court.

44.     Defendant remained the attorney of record.

45.     On or around January 29, 2018, LVNV filed an affidavit of assignment of judgment in the collections lawsuit. The affiant stated that "LVNV Funding LLC, located at 625 Pilot Road, Suite 3, Las Vegas, NV 89119, in exchange for valuable consideration, paid, was assigned the rights, title and interest in the aforementioned Final Judgment from the original Judgment Creditor ARROW FINANCIAL SERVICES, LLC A/P/O HOUSEHOLD BANK or its assignee." The affidavit did not provide the date of the assignment. The form was signed and notarized on January 11, 2018, in Greenville County, South Carolina.

46.     Ms. Acosta never received a copy of the affidavit of assignment of judgment, or any notice of assignment. Upon information and belief, none was ever sent to Ms. Acosta.

47.     This affidavit was also rejected by the court. A court rejection form attached to the affidavit titled "Reviewed by Clerk Checklist" stated: "Unable to process affidavit of assignment of judgment. Failure to provide chain of title affidavits for all assignees. Please provide certificate of conformity for out of state notary."

48.     The collections lawsuit case file does not contain the chain of title affidavits for all assignees or certificate of conformity from 2018, as required by the Clerk.

49.     Upon information and belief, LVNV is and has been the assignee and owner of the judgment since approximately April 2014.

**C.  Defendant Executed on the Judgment Without Meaningful Review, on Behalf of a Company that No Longer Owned the Judgment**

50.     In or around early June 2018, Ms. Acosta noticed that her paycheck reflected a lower amount than usual. She promptly inquired with her employer's payroll department and was informed that her employer had received an income execution related to a debt collection case. Her employer provided her with a copy of an income execution, enforced by the New York City Marshal Ronald Moses's office.

51.     The income execution was the first document that Ms. Acosta had ever seen related to the collections action.

52.     Ms. Acosta did not receive a copy of the income execution or a notice of garnishment from Defendant. Upon information and belief, none was ever sent to Ms. Acosta.

53.     The income execution is dated April 5, 2018, was signed by Defendant as "Attorney(s) for Judgment Creditor." The income execution listed Arrow Financial as the "Judgment Creditor."

54.     This statement was false. At the time that the income execution was sent, LVNV was the judgment creditor, not Arrow Financial.

55.     The income execution proposed to take the illegal action of collecting a debt on behalf of Arrow Financial — an entity that did not own the debt.

56.     Upon information and belief, the income execution was prepared, completed, and signed by Defendant on or about April 5, 2018.

57.     Marshal Moses received the income execution from Defendant on or around April 16, 2018.

9

58.     Upon information and belief, the income execution was sent by Marshal Moses to Ms. Acosta's employer on or after April 16, 2018.

59.     On the income execution, Defendant listed Ms. Acosta as the Judgment Debtor, and stated that her "last known address" was 536 79th Street, Brooklyn, NY 11209 ("536 79th Street").

60.     Ms. Acosta did not reside at 536 79th Street in April 2018, and had not lived there for approximately 18 years.

61.     The income execution sought to recover the original judgment amount of $10,406.66 plus interest from February 15, 2008. The interest was not stated and the full judgment balance was not reflected on the document.

62.     Upon information and belief, Defendant did not meaningfully review the documents or facts of the collections lawsuit prior to enforcing the judgment against Ms. Acosta. If Defendant had done a meaningful review, it would have seen that the judgment creditor was no longer Arrow Financial, and that the affidavit of service was facially defective.

63.     Defendants caused Ms. Acosta's wages to be first garnished during the May 15 to May 31, 2018 pay period, in the amount of $213.54.

64.     Defendants garnished Ms. Acosta's wages unlawfully, because they were garnished on behalf of a party—Arrow Financial—that did not own the judgment.

65.     Learning about the collections action and judgment against her by receiving the income execution from her employer, where she has worked since approximately 2002, made Ms. Acosta feel embarrassed and ashamed, and made her worry that her employer would think that she was not fiscally responsible.

66.     Immediately upon receiving the income execution, Ms. Acosta called Defendant at the number listed at the bottom of the income execution form.

67.     On this telephone call in or around early June 2018, Defendant's telephone representative requested that Ms. Acosta state her current address. Ms. Acosta provided the 106 Burgher Avenue address, where she has lived since 2006. The call representative informed Ms. Acosta that Defendant did not have 106 Burgher Avenue in its records, and that she would add it to Ms. Acosta's account information. The representative continued to explain that there was a default judgment against Ms. Acosta and told Ms. Acosta that Defendant would mail her information related to the collections lawsuit.

68.     Upon information and belief, Defendant did not have Ms. Acosta's 106 Burgher Avenue address until Ms. Acosta provided it during this telephone call in or around June 2018.

69.     Defendant mailed Ms. Acosta a letter dated June 26, 2018, to 106 Burgher Avenue.

70.     The June 26, 2018 letter was the first communication Ms. Acosta received directly from Defendant related to the collections action. Ms. Acosta could not, even in the exercise of due diligence, have learned of this lawsuit earlier than early June 2018.

71.     The June 26, 2018 letter stated that it was sent in response to Ms. Acosta's telephone request for information about the account, and provided a copy of the judgment entered on February 15, 2008. The letter is signed on behalf of Defendant by Fany Ortiz, a Compliance Supervisor.

72.     The June 26, 2018 letter listed "Arrow Financial Services, LLC" as the "Creditor to Whom Debt is Owed."  This statement was false.

11

73.     The letter also claimed the total judgment balance was $20,091.14. This was the first time that Ms. Acosta learned that the full judgment balance was $20,091.14.

74.     The June 26, 2018 letter reflected a purported "default date" of September 2, 2004, for a Household Bank account ending in 2221.

75.     Ms. Acosta is unfamiliar with the underlying account and believes she does not owe the debt.

76.     Suddenly learning about an alleged ten year old judgment against her for $20,091.14, for a debt that she believes she does not owe, caused Ms. Acosta to feel extreme anxiety, stress and emotional distress. She felt overwhelmed by the situation and that it was unfair that she had to defend herself against a judgment that was entered over ten years ago in a case in which she was never served.

77.     On information and belief, Defendant has unlawfully executed on judgments on behalf of Arrow Financial, when Arrow Financial had no authority to enforce, on many other occasions. In 2007, the year Defendant commenced the collections lawsuit against Ms. Acosta, it filed approximately 3,810 other actions on behalf of Arrow Financial. On information and belief, Defendant has made similar misrepresentations about Arrow Financial's ownership of judgments to other consumer defendants in debt collection cases.

## D. Defendant Improperly Opposed Ms. Acosta's Attempt to Vacate the Judgment and Unduly Prolonged the Legal Proceedings Against Her

78.     On or around July 31, 2018, acting pro se, Ms. Acosta went to the New York City Civil Court, Richmond County, and filed an order to show cause seeking vacatur of the judgment against her in the collections lawsuit. Ms. Acosta served a copy of the order to show cause on Defendant on or around August 1, 2018, pursuant to the state court's order.

12

79.     By this time, approximately $1,075.10 had been garnished from Ms. Acosta's paychecks.

80.     Ms. Acosta stated in a sworn affidavit supporting her motion to vacate that she was not served with a summons and complaint and that she first learned of the legal action when she received the income execution from her employer in or around early June 2018.

81.     In the proposed answer included in her motion to vacate, Ms. Acosta stated that she had not lived at 536 79th Street, the address listed on the income execution, in over 18 years.

82.     Ms. Acosta had requested to see the affidavit of service for the collections lawsuit, but the clerk informed her that it would take between one and two months to retrieve the 2007 case file from archives. Because her income was under active garnishment, Ms. Acosta immediately filed her order to show cause to stay the garnishment and have her motion to vacate heard.

83.     Pending a hearing on August 15, 2018, on the motion to vacate, the enforcement of the income execution was stayed.

84.     On August 15, 2018, Ms. Acosta, still unrepresented, appeared in court. Defendant had not opposed or otherwise responded to Ms. Acosta's motion to vacate by that time, but requested more time from the court to oppose Ms. Acosta's motion to vacate.

85.     The hearing was adjourned to October 31, 2018. Defendant was directed to include a copy of the affidavit of service with any opposition.

86.     At the August 15, 2018 hearing, and based on her June 2018 telephone call, in which Defendant's representative stated that Defendant did not have Ms. Acosta's current address, Ms. Acosta provided Defendant with her 106 Burgher Avenue address for a second time to ensure that she would receive the opposition papers.

87.     Defendant served Ms. Acosta with an affirmation in opposition to her motion to vacate dated August 29, 2018, which was signed by Michael J. Florio, Esq., an attorney employed by Defendant.

88.     Appended to the opposition as exhibits were copies of the entered judgment, the summons and complaint, the affidavit of service, and debt collection letters allegedly mailed to Ms. Acosta. The affirmation was made on behalf of Arrow Financial as "Plaintiff" and does not make any reference to LVNV as the current putative creditor.

89.     In its opposition, Defendant stated that "[Ms. Acosta] moves to vacate a 2008 default judgment that was entered against her and to dismiss the case for lack of personal jurisdiction."

90.     Defendant affirmed, upon information and belief, that the collections lawsuit relates to a HSBC Bank account, which was opened on or about July 13, 2002, and which went into default on or about April 30, 2005.

91.     Defendant stated that Ms. Acosta's "motion to vacate a default judgment is governed by section 5015 and section 317 of the Civil Practice Law and Rules. Such a motion shall not be granted without the showing of a reasonable excuse for failing to answer a complaint along with demonstration of a meritorious defense." Defendant quoted N.Y. C.P.L.R. § 317 and N.Y. C.P.L.R. § 5015(a)(1), representing that this was the only section governing vacatur under section 5015. Defendant argued that Ms. Acosta's motion must be denied because she failed to provide a reasonable excuse and meritorious defense, and because she received notice of the judgment against her and failed to move the court within one year of such notice.

92.     But Ms. Acosta's motion to vacate was based on lack of personal jurisdiction, and was thus governed by N.Y. C.P.L.R. § 5015(a)(4). Such motions may be brought at any time,

14

and the existence of an excusable default or a meritorious defense is not relevant to a claim of lack of personal jurisdiction.

93.     The standard and text cited by Defendant were from N.Y. C.P.L.R. § 5015 (a)(1), which applies when the movant was on notice of the lawsuit, and N.Y. C.P.L.R. § 317, which applies only where the movant was properly served. Neither provision applied to Ms. Acosta's motion.

94.     Defendant's opposition deliberately misrepresented the legal standard that applied to Ms. Acosta's motion. On information and belief, Defendant did so with the intent of deceiving Ms. Acosta, in order to discourage her from fully availing herself of her legal rights. Defendant also did so with the intent of deceiving the court as to the applicable legal standard.

95.     Defendant files thousands of consumer debt cases in the New York City Civil Courts every year. According to the New York Unified Court System's online database, in 2018 Defendant filed more than 17,000 debt collection cases in New York City Civil Court alone.

96.     In the overwhelming majority of cases in which Defendant represents the plaintiff, the consumer defendant is pro se.

97.     According to the New York City Civil Courts, of the 75,633 consumer credit cases filed in 2017, only 4% of defendants were represented by counsel.

98.     Defendant regularly opposes consumer defendants' motions to vacate default judgments in its regular course of business.

99.     On information and belief, Defendant deliberately misrepresents the legal standard that applies to pro se consumers' motions in a manner substantively identical to the misrepresentations it made in its opposition to Ms. Acosta's motion.

100.     On information and belief, Defendant knows that no pro se consumer will understand that the legal standard it has cited is inaccurate. On information and belief, Defendant deliberately misrepresents the legal standard in these cases in order to discourage pro se consumers from fully availing themselves of their legal rights.  Defendant also does so with the purpose of erecting procedural and substantive challenges that pro se consumers are ill-equipped to handle.

101.     Defendant claimed that Ms. Acosta received notice of the judgment against her in or around 2015 based on five debt collection letters that it claimed were mailed to Ms. Acosta in 2015 and 2016. The debt collection letters listed 106 Burgher Avenue as the mailing address, and each letter reflects an alleged "default date" of April 30, 2005.

102.     The alleged debt collection letters dated February 1, 2016, and August 18, 2016, claimed that the "Current Owner" of the putative debt was LVNV. The three other debt collection letters, dated June 17, 2015, July 22, 2015, and August 26, 2015, listed the "Current Owner" as Arrow Financial.

103.     Ms. Acosta never received any of the five debt collection letters from Defendant. Upon information and belief, no notices or debt collection letters were ever mailed to 106 Burgher Avenue in or around 2015 and 2016.

104.     Upon information and belief, these alleged debt collection letters are not true and accurate copies of any letters actually sent to Ms. Acosta at 106 Burgher Avenue in or around 2015 or 2016.

105.     Upon information and belief, these debt collection letters were generated and printed in around August 2018 for the purpose of opposing Ms. Acosta's motion to vacate.

106.    Upon information and belief, Defendant regularly fails to verify, update, and maintain accurate consumer account information in the handling and maintaining of consumer debt collection accounts, and lacks any meaningful form of review or due diligence.

107.    Defendant also affirmed in its opposition to Ms. Acosta's motion to vacate the default judgment that the affidavit of service created a presumption that Ms. Acosta was served, although Defendant falsely asserted that she was served via "substitute service" pursuant to N.Y. C.P.L.R. § 308(2), when the affidavit stated she was served via "nail and mail" pursuant to N.Y. C.P.L.R. § 308(4).

108.    Defendant concluded its opposition by stating:

> [i]t is respectfully submitted that [Ms. Acosta's] order to show cause should be denied as [Ms. Acosta] had knowledge of the entered judgment for a period of well over a year, has failed to set forth a reasonable excuse for her default, does not have a potentially meritorious defense, nor has [Ms. Acosta] explained to the court why she stood idly by, willfully and persistently, while the action proceeded to judgment and enforcement proceeding.

109.    When Ms. Acosta received Defendant's opposition, it was the first time that she saw the affidavit of service in the collections lawsuit.

110.    On or around October 15, 2018, Ms. Acosta served and filed a supplemental affidavit in support of her pro se motion to vacate, in which she stated:

> I was never properly served as it is stated in the documents dated as of 2007. I just recently became aware of this debt from my human resources department at my place of employment. Arrow Financial Services claim they have served me, but I have not seen any proof as [sic] such. I have been at my current residence since May 2006.

111.    As a pro se consumer, Ms. Acosta had no way of knowing that the legal standard cited by Defendants was incorrect.

17

112.     On October 31, 2018, Ms. Acosta appeared pro se in state court before Hon. Lisa Grey on her motion to vacate. She received limited-scope assistance from the New York Legal Assistance Group's Volunteer Lawyer for the Day program.

113.     At the oral argument, Defendant repeated its argument that Ms. Acosta's motion was time-barred and lacked a reasonable excuse and meritorious defense, relying again on the debt collection letters allegedly mailed to Ms. Acosta in 2015 and 2016 and knowingly relying on the erroneous legal standard.

114.     Defendant also misrepresented to the court and to Ms. Acosta that Marshal Moses's office provided the 536 79th Street address used on the income execution.

115.     This statement is false. Marshal Moses's office confirmed that the 536 79th Street address was provided by Defendant.

116.     Upon information and belief, Defendant did not meaningfully review the affidavit of service before enforcing the judgment or in preparing its affirmation in opposition to Ms. Acosta's motion to vacate based on lack of personal jurisdiction. Any meaningful review by an attorney would have revealed the lack of "indicated person" on the affidavit.

117.     On or around December 5, 2018, Defendant sent Ms. Acosta a notice of entry, which included Judge Grey's Decision and Order, dated November 27, 2018, denying Ms. Acosta's motion to vacate.

118.     In the Decision and Order, Judge Grey applied the incorrect standard of N.Y. C.P.L.R. § 5015(a)(1), rather than the applicable section 5015(a)(4) standard for lack of personal jurisdiction, and found Ms. Acosta's motion to be untimely. Judge Grey found that Ms. Acosta failed to rebut the presumption of service created by the affidavit of service because she did not provide documentary evidence of her address at the time.

18

119.     The Decision and Order relies entirely on the incorrect and misrepresented law and fact that Defendant asserted in its affirmation in opposition.

120.     Ms. Acosta, acting pro se, filed a timely notice of appeal.

121.     Shortly thereafter, Ms. Acosta retained the New York Legal Assistance Group to represent her in the collections lawsuit and appeal.

122.     On or around January 4, 2019, Ms. Acosta, through her counsel, served Defendant with a motion to reargue and renew pursuant to N.Y. C.P.L.R. § 2221. The motion argued that in denying Ms. Acosta's pro se order to show cause, the state court judge overlooked or misapprehended the applicable standard. The motion also clarified for the court that Ms. Acosta has never lived at 123 Ada Drive, and provided documentary evidence in the form of her New York State driver's licenses.

123.     The motion was taken as fully submitted on March 4, 2019. It is currently pending.

### E.  Defendant's Unfair and Deceptive Debt Collection Harmed Ms. Acosta

124.     The collections action has caused Ms. Acosta to suffer extreme emotional distress such as feelings of anxiety and stress, as well as embarrassment, shame, and worry at her job.

125.     Ms. Acosta has a full-time job and maintains a home with her family. Her grandmother's failing health required her to move into the Acosta's home and make Ms. Acosta her Power of Attorney. Working to vacate and dismiss the judgment against her, which had grown to over $20,000 by the time she learned of its existence, required Ms. Acosta to take time and resources away from her family's well-being. This included leaving her grandmother in the hospital to attend the October 31, 2018 hearing, which had been adjourned from August 15 to

allow Defendant to serve and file an opposition. Juggling her family and work responsibilities with the collections lawsuit compounded the extreme stress and anxiety Ms. Acosta felt.

126.     Defendant has taken approximately $1,075.10 from Ms. Acosta's wages. Ms. Acosta has had to pay mailing and court fees to defend herself in the collections lawsuit, as well as taking several days off from work which she would otherwise have saved for family emergencies.

## FIRST CAUSE OF ACTION
### FDCPA, 15 U.S.C. § 1692

127.     Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

128.     Defendant violated the FDCPA, 15. U.S.C. § § 1692e and 1692f, by making materially false and misleading representations, using deceptive means, and engaging in unfair and abusive practices in the collection of a debt. Defendant's violations include, but are not limited to:

   a.   Unlawfully executing on a default judgment on behalf of an entity that did not own the judgment and had no authority to enforce it;

   b.   Making false representations, including, but not limited to, representing:

       i.   to Ms. Acosta that Arrow Financial was the current judgment creditor to whom the debt was owed,

       ii.   that Ms. Acosta was properly served in the underlying collections lawsuit,

       iii.   that debt collection letters were mailed to Ms. Acosta to her current address in 2015 and 2016, and

       iv.   incorrect legal standards to Ms. Acosta and to the court.

20

    c.   Collecting on a debt by filing a collections lawsuit, executing on a judgment, and opposing a pro se motion to vacate without meaningful attorney review; and

    d.   Unfairly and unduly prolonging litigation by misrepresenting facts and law.

**SECOND CAUSE OF ACTION**
**N.Y. Gen. Bus. Law § 349**

129.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

130.    Defendant violated the N.Y. Gen. Bus. Law § 349 *et seq*. by using deceptive acts and practices in the conduct of its business.

131.    Defendant committed the deceptive acts and practices willfully and/or knowingly.

132.    Defendant's conduct was consumer-oriented and has a broad impact on the New York consumer public.

133.    Defendant's wrongful and deceptive acts caused injury and damages to Plaintiff.

134.    Defendant's violations include, but are not limited to:

    a.   Unlawfully executing on a default judgment on behalf of an entity that did not own the judgment and had no authority to enforce it;

    b.   Making false representations, including, but not limited to, representing:

        i.   to Ms. Acosta that Arrow Financial was the current judgment creditor to whom the debt was owed,

        ii.   that Ms. Acosta was properly served in the underlying collections lawsuit,

        iii.   that debt collection letters were mailed to Ms. Acosta to her current address in 2015 and 2016, and

        iv.   incorrect legal standards to Ms. Acosta and to the court.

135.    As a direct and proximate result of these violations of Section 349 of the General

Business Law, Ms. Acosta has suffered compensable harm and is entitled to recover actual and

treble damages, costs, and attorneys' fees.

**JURY DEMAND**

136.    Plaintiff demands a trial by jury.

**PRAYER FOR RELIEF**

137.    WHEREFORE, Plaintiff requests the following relief:

a.  A declaration that Defendant has committed the violations of law alleged in this
    action;

b.  An order enjoining and directing Defendant to cease violating G.B.L. § 349 *et
    seq.*;

c.  Statutory damages under 15 U.S.C. § 1692k;

d.  An order awarding disbursements, costs, and attorney's fees under 15 U.S.C. §
    1692k and G.B.L. § 349;

e.  A judgment for actual, statutory, punitive, and exemplary damages;

f.  Prejudgment and post judgment interest as allowed by law;

g.  Such other and further relief as to the Court may appear just and proper.

Dated: New York, New York

      April 4, 2019

                            Respectfully submitted,


                            BETH GOLDMAN, ESQ.
                            NEW YORK LEGAL ASSISTANCE GROUP
                            7 Hanover Square, 18th Floor
                            New York, NY 10004


                            By: Shanna Tallarico, Of Counsel
                            Attorney for Plaintiff
                            Phone: 212-613-6555
                            Fax: 212-714-7591
                            Email: stallarico@nylag.org


                            By: R. T. Winston Berkman-Breen, Of Counsel
                            Attorney for Plaintiff
                            Phone: 212-613-5000 ext. 5421
                            Fax: 212-714-2562
                            Email: wberkman-breen@nylag.org
                            *EDNY Admission pending*